**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | | |
|---|---|---|---|
| In re | ) | Chapter 13 | |
| | ) | | |
| Topica Heath, | ) | Case No. 22-06003 | |
| | ) | | |
| Debtor. | ) | Honorable Deborah L. Thorne | |

**MEMORANDUM OPINION**

Trustee Marilyn O. Marshall objects to confirmation of Debtor Topica Heath's Chapter 13

plan. (*See* Obj., Dkt. No. 36.) For the reasons explained below, the Trustee's objection is overruled,

and the Debtor's plan is confirmed.

**I. Background**

On May 26, 2022, the Debtor filed her petition, schedules, a Statement of Financial Affairs

("SOFA"), and a Chapter 13 plan. Under the proposed plan, the Debtor will pay $585 per month

for thirty-six months.[1] (*See* Ch. 13 Plan, Dkt. No. 25.) In the event the Debtor receives a tax refund

exceeding $1,200, she will tender the excess to the Trustee as additional payments under the

proposed plan. The Debtor's proposed plan will pay for her car through payments to the Trustee

and will pay approximately ten percent of the amount owed to general unsecured creditors. The

Debtor has two dependent children, and the budget contained in Schedule I is modest and

reasonable for the family. (*See* Am. Sch. I, Dkt. No. 18.)

The Trustee has objected to confirmation of the Debtor's plan, alleging that it was not filed

in good faith and is not feasible. Specifically, the Trustee points to discrepancies among the

Debtor's Amended SOFA (*see* Am. SOFA, Dkt. No. 33), her application for a Paycheck Protection

---

[1] A three-year plan is permissible because Debtor's income is below median in Illinois. *See* 11 U.S.C. § 1322(d).

Program (PPP) loan,[2] and business losses listed on her tax transcripts from 2018 through 2021.[3] (*See* Obj. ¶¶ 4–11.) She argues that the Amended SOFA "either fails to disclose all business interests or shows that the debtor was not eligible for the PPP loan she received and that her four prior years' tax returns need to be amended with an unliquidated amount owed for back taxes, which would render the plan unfeasible." (*Id.* ¶ 15.) Importantly, however, the Debtor's PPP loan has been forgiven, and she does not currently owe money to the Small Business Administration (SBA) or the IRS. (*See* Debtor's Resp. to Trustee's Obj. ("Resp.") ¶¶ 3, 12, Dkt. No. 40.)

The court held a confirmation hearing on February 7, 2023. The Debtor was the only witness, and her testimony was credible. The Debtor testified that, starting in October 2020, she was the 100% owner of a T-shirt business that she ran out of her home. She sold printed T-shirts to friends and others by word of mouth. It was unclear how much (if any) income her business generated.  In 2021, she authorized a friend to apply for a PPP loan on her behalf. The Debtor then received a $20,000 loan, which she used to pay for ink, shirts, two silkscreen printers, and approximately four months of back rent. Her T-shirt business is no longer operating. As for her taxes, the Debtor testified that a family friend prepares her tax returns, and although the Debtor did sign the tax returns, she did not understand them. She has not received any notice from the IRS about a reassessment or tax debt. She tendered four years of IRS returns to the Trustee, as required under the Bankruptcy Code. *See* 11 U.S.C. § 1308(a).

---

[2] The Trustee's office has indicated to the court it has started to search public databases for information as to whether Chapter 13 debtors have received PPP loans. It seems that the purpose of this search is to detect whether Chapter 13 debtors have obtained these loans fraudulently or whether the loan applications conflict with debtors' schedules and SOFAs. Neither the SBA nor the IRS have indicated to the Debtor that she owes back taxes. In fact, the Trustee filed an exhibit to her Objection that indicates that the SBA has forgiven the loan. (*See* Dkt. No. 36, Ex. A.)

[3] Though the Trustee's objection references tax transcripts from four years, she has only filed a tax transcript from 2019. (*See* Dkt. No. 43, Ex. C.) The Trustee did not introduce this tax transcript at the confirmation hearing, explain its importance, or question the Debtor about its contents.

After the hearing, the Debtor updated her schedules to list the printers, T-shirts, and ink as business-related property. (*See* Dkt. No. 49.) The court took the Trustee's objection under advisement.

## II. Discussion

Chapter 13 requires that a debtor commit all of her disposable income to repayment of her debts. *See* 11 U.S.C. § 1325(b)(1). "Disposable income" means the debtor's current monthly income minus reasonably necessary expenses for the maintenance and support of the debtor or her dependents. *See* 11 U.S.C. § 1325(b)(2). The Debtor's plan meets this requirement: with a monthly take-home pay of $4,848.96 and reasonably necessary expenses of $4,263.96, the Debtor has a net income of $585 per month, all of which she is committing to plan payments. (*See* Am. Sch. I and J, Dkt. No. 18; Ch. 13 Plan.) The Debtor has also committed to having her monthly payments withdrawn from her monthly salary and has not missed a payment in the nearly nine months the case has been pending.

Additionally, debtors must satisfy each element of 11 U.S.C. § 1325(a) for confirmation. While the party objecting to confirmation has the initial burden to produce evidence that supports the objection, it is ultimately a debtor's responsibility to meet each requirement of § 1325(a) by a preponderance of the evidence. *See, e.g.*, *In re Szafraniec*, No. 21-10216, 2022 WL 1750369, at *2 (Bankr. N.D. Ill. May 27, 2022); *In re McNichols*, 249 B.R. 160, 168 (Bankr. N.D. Ill. 2000). Here, the Trustee's objection concerns two requirements for confirmation: good faith and feasibility. *See* 11 U.S.C. § 1325(a)(3) and (a)(6).

### A. Good Faith

#### 1. Legal standard

Section 1325's "good faith" inquiry—which focuses on a debtor's *plan*—is distinct from whether a debtor's *petition* has been filed in good faith. *In re Love*, 957 F.2d 1350, 1354 (7th Cir. 1992) (discussing the "two separate good faith determinations in Chapter 13 proceedings").

Good faith under § 1325 is "incapable of precise definition," meaning that bankruptcy courts must "look at the totality of circumstances and, thereby, make good faith determinations on a case-by-case basis." *Id.* at 1355. The guiding focus of the inquiry must be whether the plan is fundamentally fair to creditors and fair "in a manner that complies with the spirit of the Bankruptcy Code's provisions." *Id*. at 1357; *see also In re Shafer*, 393 B.R. 655, 661 (Bankr. W.D. Wis. 2008) (reviewing the history of the "good faith" language and explaining that the ultimate question in this circuit is whether the debtors are "trying to pay their creditors, or . . . trying to thwart them"). The Seventh Circuit has provided a number of nonexhaustive factors to guide the good faith analysis:

> (1) whether the plan states the secured and unsecured debts of the debtor accurately;
> (2) whether the plan states the expenses of the debtor accurately;
> (3) whether the percentage of repayment of unsecured debts is correct;
> (4) whether inaccuracies in the plan amount to an attempt to mislead the bankruptcy court; and
> (5) whether the proposed payments indicate a fundamental fairness in dealing with creditors.

*In re Smith*, 286 F.3d 461, 466 n.3 (7th Cir. 2002) (citing *In re Rimgale*, 669 F.2d 426, 432 (7th Cir. 1982)). Additionally, "the accuracy of a debtor's financial disclosures in his plan" is relevant to the good faith inquiry. *Id.* at 469.

#### 2. The Debtor's plan was filed in good faith

The court first addresses the accuracy of the Debtor's financial disclosures. The Trustee has not alleged that the proposed plan itself contains any inaccuracies. Instead, the Trustee argues

4

that the proposed plan does not comply with section 1325 because there may be confusion in her SOFA about when the Debtor operated her T-shirt business, and this confusion indicates a lack of good faith. The Trustee is correct that the Debtor's original Schedule B failed to list her minimal business assets, but she has since amended this filing to reflect $650 worth of printing supplies and T-shirts. (*See* Dkt. No. 49.)

Turning to her Amended SOFA, the Debtor stated that she had an interest in the business "Unveiled Rumors by Tee," which began in October 2021. (*See* Am. SOFA at 11.) The Trustee argues that, to qualify for a PPP loan, her business had to be in operation on February 15, 2020. The Trustee produced a document showing that the SBA has forgiven the PPP loan to the Debtor. Therefore, the SBA is not a creditor in this case.  The Trustee is, in effect, seeking an adjudication in this court about the propriety of the PPP loan when the loan is not related to this bankruptcy case. The Trustee has failed to show how the circumstances of the PPP loan have any relevance to the confirmation of the Debtor's plan.

The same is true regarding the IRS. The Trustee contends that the Debtor's tax returns are not accurate and that she therefore owes a tax debt that has not been identified and must be paid in the plan. The IRS has made no such claim on its own behalf; there is no current dispute between the Debtor and the IRS regarding any tax liability. The Debtor did not list the IRS as a creditor because, when she filed her petition, she did not think that she owed a tax debt. If the IRS believes otherwise, it is free to raise the issue itself. But it has not done so. It is not this court's role to examine the tax returns of every debtor to determine if there is a possibility that they owe taxes based on errors in past tax returns when the IRS has not raised the issue itself. As with the PPP loan, there is no tax debt that must be paid through the plan. The Trustee has failed to provide any

5

basis for concluding that the Debtor's plan was not proposed in good faith based on alleged errors in tax returns.

With both of her arguments, the Trustee is, in effect, attempting to assert claims on behalf of parties who do not claim that the Debtor owes them money. The information regarding the Debtor's T-shirt business provided in her Amended SOFA is consistent with the credible testimony she gave at the confirmation hearing, and there is no indication that any inaccuracies were an attempt to be unfair to her creditors. The Trustee has failed to show that the Debtor's plan was proposed in bad faith based on alleged debts that the SBA or the IRS might be able to assert if they so choose.

It is also worth noting that, even if the Debtor's PPP application had been less than honest, "a Chapter 13 plan may be confirmed despite even the most egregious pre-filing conduct where other factors suggest that the plan nevertheless represents a good faith effort by the debtor to satisfy his creditor's claims." *Smith*, 286 F.3d at 467 (finding that debtor's plan was filed in good faith despite prepetition fraud that led to debtor incurring debt) (quoting *Neufeld v. Freeman*, 794 F.2d 149, 153 (4th Cir. 1986)).

The Debtor's plan shows a good faith effort to satisfy her creditor's claims. The plan accounts for all of the Debtor's current creditors, and it accurately reflects her current debts. It does not seem that the Debtor was attempting to mislead the court with any inaccuracies in her plan. Finally, the plan indicates that the Debtor is trying to pay creditors to the best of her ability. As explained above, the Debtor has a monthly net income of $585, which is the exact amount she has committed to her plan. This commitment is bolstered by the fact that the Debtor has been making these payments throughout her case. The court is convinced that the Debtor is "really

6

trying to pay the creditors to the reasonable limit of [her] ability," not "thwart them." *See Olson*, 553 B.R. at 349.

### B. Feasibility

#### 1. Legal standard

Section 1325(a)(6), known as the feasibility requirement, provides that a debtor must "be able to make all payments under the plan and to comply with the plan." 11 U.S.C. § 1325(a)(6). To meet this requirement, "the plan must have a reasonable likelihood of success as determined by the particular circumstances of the plan and the case" and "the plan proponent must, at minimum, demonstrate that the Debtor's income exceeds expenses by an amount sufficient to make the payments proposed by the plan." *Marshall v. Blake*, 885 F.3d 1065, 1083 (7th Cir. 2018) (citations and quotation marks omitted), *overruled on other grounds by In re Wade*, 926 F.3d 447 (7th Cir. 2019). "Projections of the income necessary to finance a plan of reorganization must be based on concrete evidence of financial progress and must not be speculative, conjectural or unrealistic." *In re Cherry*, 84 B.R. 134, 139 (Bankr. N.D. Ill. 1988). The feasibility requirement is "not rigorous." *In re Olson*, 553 B.R. 343, 348 (Bankr. N.D. Ill. 2016) (citation omitted).

#### 2. The Debtor's plan is feasible

The Trustee objects to feasibility on the theory that *if* the Debtor were to owe money to the SBA or the IRS—which she currently does not—these obligations would impede her ability to comply with the proposed plan. (*See* Obj. ¶¶ 12, 15.) The court agrees with the Debtor that this argument is too speculative to serve as a basis for denying confirmation. The Debtor's PPP loan has been forgiven, and, even if the IRS determines that the Debtor owes tax debt, the amount might be miniscule enough to not render the plan infeasible. Moreover, if the IRS were to determine that it holds a claim, the Debtor could presumably modify her plan to deal with the issue. But this is at

best a completely speculative scenario, and arguments based upon speculation are disfavored at the confirmation stage. *Cf. Hamilton v. Lanning*, 560 U.S. 505, 524 (2010) (finding that, when determining a debtor's projected disposable income, courts can account for changes that are "*known or virtually certain* at the time of confirmation" (emphasis added)); *In re Soppick*, 516 B.R. 733,760–61 (Bankr. E.D. Pa. 2014) (denying debtor's plan as not feasible because it was based on speculative funding from pending litigation); *In re Stanley*, 296 B.R. 402, 409 (Bankr. E.D. Va. 2002) (denying confirmation where plan would be funded by a speculative sale of land). As proposed, the Debtor's plan accounts for her current income and expenses and all of her current creditors.

The Debtor has also shown that she is able to make payments under the plan. She is employed with the United States Postal Service, and she has been making payments by payroll deduction since July 2022. During the confirmation hearing, she testified that she does not expect her income to change and that she will continue to be able to make plan payments. Based on these facts, the court is satisfied that the proposed plan is feasible.

### III. Conclusion

Because the Debtor's plan conforms to the requirements of 11 U.S.C. § 1325(a), the Trustee's objection is overruled, and Debtor's Chapter 13 plan is confirmed.

Dated: 2/14/2023

_____
Honorable Deborah L. Thorne
United States Bankruptcy Judge

8